*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED
MAY 1 2 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>KIRRA DENISE MOORE,<br><br>              Debtor.<br><br>PALMER J. SWANSON, P.C.,<br><br>              Plaintiff,<br><br>v.<br><br>KIRRA DENISE MOORE,<br><br>              Defendant. | Case No. 10-37374-D-7<br><br>Adv. Pro. No. 11-2022-D<br><br>Docket Control No. MHK-2<br><br>DATE:  April 27, 2011<br>TIME:  10:00 a.m.<br>DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

On April 5, 2011, the defendant in this adversary proceeding, Kirra Denise Moore ("Moore"), filed a first amended counterclaim ("counterclaim") against plaintiff Palmer J. Swanson, P.C. ("Swanson"),[1] and on April 13, 2011, Swanson filed a motion to dismiss the counterclaim, Docket Control No. MHK-2 (the "Motion").[2] For the reasons set forth below, the

---

1. "Swanson" as used herein will mean either Palmer J. Swanson, P.C., or its principal, Palmer J. Swanson, or both, as appropriate for the context.

2. At an April 13, 2011 hearing on Swanson's motion to dismiss Moore's original counterclaim, the court granted Swanson's request to shorten the time for notice of the present Motion, such that the April 27, 2011 hearing would be a final

court will grant the Motion in part.

By its complaint in this proceeding, Swanson seeks to deny Moore's discharge pursuant to various subsections of § 727(a),[3] or in the alternative, to dismiss Moore's bankruptcy case pursuant to § 521(e)(2)(C). In response, Moore filed the counterclaim, in which she challenges Swanson's status as a creditor, seeks general and punitive damages and attorney's fees, and asks that the court refer Swanson to the State Bar for disciplinary action. To summarize, Moore alleges that Swanson, an attorney, had at some point in time provided legal services to Moore for which she had paid him in full; that she referred a third party, Steve Leus, to Swanson for representation in a probate case; that Swanson provided services to Leus; that Swanson later attempted to charge Moore for those services and knowingly made fraudulent representations about Moore in his attempt to collect for those services.

A. The First Through Sixth Causes of Action

Moore's first through fifth causes of action charge Swanson with violations of the California Business & Professions Code (charging for attorney's fees over $1,000 without a written agreement, refusal to provide billing statements), fraudulently seeking attorney's fees not due (in state court and in this case), and charging unreasonable fees. These allegations all go

---

hearing. A written order shortening time was filed April 14, 2011.

3. Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

to the issue of whether Swanson is a creditor of Moore with standing to pursue the complaint to deny her discharge. Moore's sixth cause of action -- for declaratory relief -- frames this issue specifically: she seeks a declaration that Swanson is not a creditor and lacks standing to pursue the adversary proceeding. In short, the first six "causes of action" are all in the nature of defenses to any claims Swanson may have against Moore.[4] They do not state affirmative claims for relief against Swanson, and for that reason, they will be dismissed.

However, the issues raised in these six causes of action are sufficiently raised in Moore's amended answer to the complaint to be treated as affirmative defenses in this proceeding.[5] Moore may pursue discovery on these issues and present them at trial or by way of an appropriate pretrial motion. The court need not and does not express any opinion on the merits of these issues at this time.

B. The Seventh and Eighth Causes of Action

In these causes of action, Moore seeks damages for abuse of process and intentional infliction of emotional distress. These

---

4. Moore's conclusion to each of these causes of action is:

> Therefore the Court should deny Plaintiff Swanson's claim as a creditor, dismiss Plaintiff Swanson's Adversary Case, award the Debtor attorney fees and costs and impose sanctions on Plaintiff Swanson.

5. The court will also treat Moore's request for attorney's fees and costs as incorporated in her amended answer. Swanson contends the request for attorney's fees is improper because Moore has no attorney in the adversary proceeding. However, that may change, and the request for attorney's fees will be determined later, after the court has ruled on the substantive issues.

1 claims are based on alleged actions on the part of Swanson both
2 before and after the date Moore filed her bankruptcy petition.
3 1. Claims Arising Pre-Petition
4      To the extent these claims arose prior to the filing of the
5 petition, they are property of Moore's bankruptcy estate.
6 § 541(a)(1). As such, these claims are subject to administration
7 only by the bankruptcy trustee in Moore's case, and Moore has no
8 standing to pursue them. Dunmore v. United States, 358 F.3d
9 1107, 1112 (9th Cir. 2004).
10 2. Claims Arising Post-Petition
11      To the extent these claims arose after the filing of the
12 petition, they do not belong to the bankruptcy estate, they
13 belong to Moore. Swanson challenges this court's jurisdiction to
14 hear these claims and contends that even if the court has
15 jurisdiction to hear them, the claims are not core proceedings.
16      This court, by reference from the district court, has
17 jurisdiction over "all civil proceedings arising under title 11,
18 or arising in or related to cases under title 11." 28 U.S.C. §§
19 1334(b), 157(a). This court may hear and determine "all core
20 proceedings arising under title 11, or arising in a case under
21 title 11 . . . ." 28 U.S.C. § 157(b)(1). This court may hear a
22 non-core proceeding that is otherwise related to a case under
23 title 11; in such a proceeding, this court would submit proposed
24 findings of fact and conclusions of law to the district court for
25 final judgment. 28 U.S.C. § 157(c)(1).
26      The seventh and eighth causes of action of Moore's
27 counterclaim -- for abuse of process and intentional infliction
28 of emotional distress -- do not "arise under title 11" because

they do not "'involve a cause of action created or determined by a statutory provision of title 11.'" See Harris v. Wittman (In re Harris), 590 F.3d 730, 737 (9th Cir. 2009). Moore's claims are created and determined under state law, not the Bankruptcy Code.

It is a closer question whether these claims "arise in" a case under title 11. "'[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995). For example, "[a] state law contract claim could exist independent of a bankruptcy case, but 'an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not.'" Harris, 590 F.3d at 737, citing Harris Pine Mills, 44 F.3d at 1437.

Thus, in Harris, a chapter 7 debtor sued the trustee after the trustee sold assets of the estate in exchange for the purchaser's release of claims against the estate that the debtor alleged had previously been released. The court held that although the debtor asserted a state law cause of action -- breach of contract, that cause of action "arose in his bankruptcy case because it could not exist independently of his bankruptcy case." 590 F.3d at 738.

In addition, the debtor's cause of action was a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) because it "arose from the trustee's post-petition conduct pursuant to the trustee's duty to administer the bankruptcy estate" and because it alleged that

part of the purchase price was the release of "contrived claims." Thus, the cause of action was "inextricably intertwined with the sale of assets-the literal administration of the bankruptcy estate." Id. at 739.

Moore's seventh and eighth causes of action, to the extent they arose post-petition, pertain to Swanson's conduct in appearing at the meeting of creditors in the capacity of a creditor, in pursuing a Rule 2004 examination in the capacity of a creditor, and in filing and prosecuting the complaint to deny Moore's discharge. As such, these claims have no existence outside of the underlying bankruptcy case in which Moore seeks a discharge; thus, they "arise in" this case. Further, these claims are core proceedings under 28 U.S.C. § 157(b)(2)(O) because they affect the adjustment of the debtor-creditor relationship.[6]

The decision in MSR Exploration v. Meridian Oil, 74 F.3d 910 (9th Cir. 1996), although cast in terms of preemption, supports this conclusion. In that case, the bankruptcy court sustained

---

6. The Harris court held that the debtor's claims were not core proceedings under 28 U.S.C. § 157(b)(2)(N) (orders approving the sale of property) because they did not challenge the bankruptcy court's order approving the sale. Instead, the claims were challenges to the trustee's conduct in selling the assets and the purchaser's conduct in relying on previously released claims as part of the purchase price; thus, they concerned the trustee's administration of the estate, and were core proceedings under 28 U.S.C. § 157(b)(2)(A).

Similarly, in this case, the court does not base its finding of a core proceeding on 28 U.S.C. § 157(b)(2)(J) (objections to discharge) because Moore's causes of action are not objections to discharge. Instead, the claims challenge Swanson's conduct in asserting himself to be a creditor and in pursuing the objection to discharge. Thus, they are core proceedings under 28 U.S.C. § 157(b)(2)(O) because they affect the adjustment of the debtor-creditor relationship between Moore and Swanson.

the objections of a chapter 11 debtor in possession to claims filed by a group of creditors.  Later, after it had obtained confirmation of and substantially consummated a plan of reorganization, the debtor filed a malicious prosecution action in district court alleging that the creditors had maliciously filed and prosecuted their claims in the bankruptcy case.  The court held that the malicious prosecution claim was "completely preempted by the structure and purpose of the Bankruptcy Code." 74 F.3d at 916.  Thus, the malicious prosecution claims should have been brought in the bankruptcy court, and not as a separate action in the district court.  Id.

The court had actually framed the issue in even broader terms, as "whether state malicious prosecution actions for events taking place within the bankruptcy court proceedings are completely preempted by federal law."  Id. at 912.  Given this broad language, the court finds that Moore's abuse of process and intentional infliction claims, based as they are on events taking place within her bankruptcy case, are within the holding of MSR Exploration, and thus, are within this court's jurisdiction.

The court in MSR Exploration emphasized "Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and . . . debtors alike."  74 F.3d at 914.

> While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

Id.

/ / /

Similar reasoning governed in <u>Gonzales v. Parks</u>, 830 F.2d 1033, 1035 (9th Cir. 1987), in which a creditor whose foreclosure had been stayed by the filing of a bankruptcy petition sued the debtors in state court, alleging that the bankruptcy filing was an abuse of process. Apart from the question of violation of the automatic stay, the court held that because the filing of a bankruptcy petition is a matter of exclusive federal jurisdiction, the state courts have no authority to determine whether such a filing is an appropriate one. 830 F.2d at 1035. "[I]t is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." <u>Id.</u> at 1036.

Similarly, in the present case, it is appropriate for this court to decide what penalties, if any, are appropriate for Swanson's conduct in this bankruptcy case.

Finally, in <u>Miles v. Okun (In re Miles)</u>, 430 F.3d 1083 (9th Cir. 2005), after the bankruptcy court dismissed a group of involuntary bankruptcy cases, relatives of the putative debtors filed actions in state court alleging, among other things, abuse of process and intentional infliction of emotional distress based on the filing of the involuntary petitions. The defendants were the petitioning creditors in the involuntary cases and their attorneys. The court of appeals held that § 303(i) provides the exclusive remedy for damages arising from the filing of an involuntary bankruptcy petition. 430 F.3d at 1091.

/ / /
/ / /

> Permitting state courts to decide whether the filing of an involuntary bankruptcy petition was appropriate would subvert the exclusive jurisdiction of the federal courts and undermine uniformity in bankruptcy law by allowing state courts to create their own standards as to when a creditor may properly file an involuntary petition.

Id. at 1090, citing MSR Exploration, 74 F.3d at 913-15.

For the same reasons, this court concludes that it has jurisdiction to determine whether Swanson's conduct in asserting the status of a creditor in this bankruptcy case was appropriate. As set forth above, the debtor's claims for abuse of process and intentional infliction of emotional distress, to the extent they arose post-petition, are proceedings that "arise in" this bankruptcy case, and are subject to this court's jurisdiction. Further, as matters affecting the adjustment of the debtor-creditor relationship between Moore and Swanson, they are core proceedings under 28 U.S.C. § 157(b)(2)(O).

Finally, Swanson contends Moore has failed to state a claim for abuse of process or intentional infliction of emotional distress. The court finds, however, that the counterclaim contains "enough factual allegations, taken as true, to plausibly suggest" that Moore is entitled to relief. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 945 (2007).

For the reasons set forth above, the Motion will be granted in part. As to the first, second, third, fourth, fifth, and sixth causes of action of Moore's counterclaim, the Motion will be granted and the claims dismissed. As to the seventh and eighth causes of action, to the extent they arose pre-petition, the Motion will be granted and the claims dismissed. As to the seventh and eighth causes of action, to the extent they arose

post-petition, the Motion will be denied.

    The court will issue an appropriate order.

Dated: **May 12**, 2011

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

**CERTIFICATE OF MAILING**

    I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed, or caused to be mailed, by ordinary mail a true copy of the attached document to each of the parties listed below:

Anthony Asebedo
Meegan, Hanschu & Kassenbrock
11341 Gold Express Dr., #110
Sacramento, CA 95670

Kirra Moore
3945 Ridge Street
Fair Oaks, CA 95628

DATE: 5/12/11

_____
Andrea Lovgren