

**FILED**

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

JAN - 3 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No   10-37374-D-7 |
| KIRRA DENISE MOORE, | |
| Debtor | Adv  Pro  No  11-2022-D |
| | Docket Control Nos  DMR-7, DMR-8 |
| PALMER J  SWANSON, P C , | Hearing |
| Plaintiff, | DATE    November 16, 2011<br>TIME    10 00 a m<br>DEPT    D |
| v | |
| KIRRA DENISE MOORE, | Supplemental Briefing<br>Concluded and Motion<br>Submitted on |
| Defendant | December 8, 2011 |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion**

<u>**MEMORANDUM DECISION**</u>

On September 30, 2011, the defendant in this adversary proceeding, Kirra Denise Moore ("Moore"), filed a Motion to Dismiss the Adversary Complaint and for Partial Summary Judgment on the Adversary Complaint, Docket Control No  DMR-7 (the "Motion") [1] [2]  The Motion is brought on the ground that the

_____

    1   The use of "partial" in the title appears to be a misnomer, as the Motion seeks judgment on all the causes of action of the complaint

    2   Most of the moving papers bear either Docket Control No DMR-7 or DMR-8, a few bear other docket control numbers   Moore's counsel has indicated the documents are intended to comprise a single motion, and the parties have treated them as such

1  plaintiff, Palmer J  Swanson, P C ,[3] lacks standing to pursue the

2  complaint   The Motion was briefed and argued, and the court then

3  allowed the parties to submit supplemental evidence and briefing

4  For the reasons discussed below, the court will deny both the

5  request for dismissal and the request for summary judgment

6                    I   PRELIMINARY PROCEDURAL ISSUE

7       First, Swanson points out that the Motion was not timely

8  filed under the court's scheduling order, which required

9  dispositive motions to be heard by September 30, 2011   Here, the

10  Motion was filed on September 30, 2011, and was not heard until

11  November 16, 2011   Moore failed to request modification of the

12  scheduling order to permit the late filing, which ordinarily

13  would cause the court to deny the Motion

14      However, the defense of lack of standing is a dispositive

15  one   Moore has raised the issue repeatedly since the complaint

16  was filed, and the court has addressed it in earlier rulings

17  Thus, Moore's present challenge to Swanson's standing does not

18  come as a surprise to Swanson   Further, while the scheduling

19  order provides that failure to schedule a Rule 12(b)(6)[4] motion

20  by the dispositive motions bar date constitutes a waiver of the

21  contention that the complaint fails to state a claim upon which

22  relief can be granted, the order does not contain a similar

23  ─────────────

24     3   "Swanson" as used herein will mean the plaintiff, Palmer
   J  Swanson, P C   "Palmer Swanson" will mean the plaintiff's
25  principal, Palmer J  Swanson

26     4   All references to Rule 12(b)(6) are to Fed  R  Civ  P
   12(b)(6); all references to Rule 56 are to Fed  R  Civ  P  56
27  Unless otherwise indicated, all other Rule references are to the
   Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all
28  Code, chapter, and section references are to the Bankruptcy Code,
   11 U S C  §§ 101-1532

1 │ provision with regard to summary judgment motions

2 │      Moreover, under Fed R Civ P 56(f), incorporated herein
3 │ by Fed R Bankr P 7056, the court may consider summary
4 │ judgment on its own at any time, even absent a motion by a party
5 │ And a court has the power to reconsider and modify its
6 │ interlocutory orders at any time prior to entry of final
7 │ judgment, "for cause seen by it to be sufficient," under Fed R
8 │ Civ P 54(b) (Rule 7054(a))   See City of L.A v Santa Monica
9 │ BayKeeper, 254 F 3d 882, 885 (9th Cir 2001)   Here, judicial
10 │ economy and the interests of avoiding delay and expense to the
11 │ parties dictate that the issue be considered at this time, and
12 │ the court will modify the scheduling order to permit it to
13 │ consider the Motion.  Swanson has opposed and argued the Motion
14 │ on substantive grounds and the parties have made a factual
15 │ record, the court has permitted the submission of additional
16 │ evidence and briefing after the hearing, and no further argument
17 │ or evidence is necessary

18 │ II   ANALYSIS

19 │     This court has jurisdiction over the Motion pursuant to 28
20 │ U S C §§ 1334 and 157(b)(1)   The Motion is a core proceeding
21 │ under 28 U S C § 157(b)(2)(J)

22 │ A.  Standards for Dismissal

23 │     By its complaint in this proceeding, Swanson seeks to deny
24 │ Moore's discharge pursuant to § 727(a) or to dismiss her chapter
25 │ 7 case pursuant to § 521(e)(2)(C) (for failure to supply a copy
26 │ of her tax return to Swanson upon its request).  In the
27 │ complaint, Swanson alleges it is a creditor of Moore, the
28 │ circumstances of the debt are not described

- 3 -

1    Moore contends Swanson is not a creditor of hers, and as a

2  result, has no standing to prosecute a complaint to deny her

3  discharge or to dismiss her chapter 7 case   The Motion is

4  brought under both Rule 12(b)(6) and Rule 56   A Rule 12(b)(6)

5  motion focuses, with limited exceptions, only on the pleadings

6  See Swartz v  KPMG LLP, 476 F 3d 756, 763 (9th Cir  2007)   In

7  ruling on a Rule 12(b)(6) motion, a court "accept[s] as true all

8  facts alleged in the complaint, and draw[s] all reasonable

9  inferences in favor of the plaintiff."  al-Kidd v  Ashcroft, 580

10  F 3d 949, 956 (9th Cir  2009), citing Newcal Indus , Inc  v  Ikon

11  Office Solution, 513 F 3d 1038, 1043 n 2 (9th Cir  2008)

12    So far as standing is concerned, "[t]o survive a Rule

13  12(b)(6) motion to dismiss, [a plaintiff] must allege facts in

14  his [complaint] that, if proven, would confer standing upon him "

15  Sacks v  Office of Foreign Assets Control, 466 F 3d 764, 771 (9th

16  Cir  2006), citing Warren v  Fox Family Worldwide, Inc , 328 F 3d

17  1136, 1140 (9th Cir  2003)   In this case, accepting as true the

18  allegation in the complaint that Swanson is a creditor of Moore,

19  the court concludes that the complaint sufficiently pleads

20  standing, and to the extent the Motion seeks dismissal under Rule

21  12(b)(6), it will be denied

22  B  Standards for Summary Judgment

23    In considering a summary judgment motion, on the other hand,

24  the court looks beyond the pleadings and considers the materials

25  in the record, including depositions, documents, declarations,

26  discovery responses, and so on   Rule 56(c)(1)   "The court need

27  consider only the cited materials, but it may consider other

28  materials in the record "  Rule 56(c)(3)   The moving party bears

- 4 -

1 | the burden of producing evidence showing that there is no genuine
2 | issue of material fact and that it is entitled to judgment as a
3 | matter of law   Celotex v  Catrett, 477 U S  317, 322-23 (1986)
4 | Once the moving party has met its initial burden, the non-moving
5 | party must present affirmative evidence showing the existence of
6 | genuine issues of fact for trial   Anderson v  Liberty Lobby,
7 | Inc , 477 U S  242, 256-57 (1986)

8 | C   Standing to Object to a Bankruptcy Discharge

9 |     "Standing to object to a discharge is limited to the
10 | trustee, a creditor, or the United States trustee under § 727(a)
11 | See § 727(c)(1).  Only those creditors who have claims that will
12 | be affected by the discharge can file objections to the
13 | discharge "  McCleskey v  Stockton (In re Stockton), 2005 Bankr
14 | LEXIS 3375, *30 (9th Cir  BAP 2005), citing In re Vahlsing, 829
15 | F 2d 565, 567 (5th Cir  1987)   True, a creditor whose claim is
16 | disputed by the debtor may object to discharge   See Vahlsing,
17 | 829 F 2d at 567 ["A discharge would affect the interests of
18 | creditors with disputed claims since they have a chance of
19 | prevailing on their claims "]

20 | However, once a creditor's claim has been disallowed, he or
21 | she no longer has standing to object to discharge   Stockton,
22 | 2005 Bankr  LEXIS 3375, at *31, citing Vahlsing, 829 F 2d at 567
23 | This is because "a discharge will not even potentially affect"
24 | the interests of a person or entity not holding a claim against
25 | the debtor   Vahlsing, 829 F 2d at 567   Thus, a plaintiff's
26 | status as a creditor is appropriate for determination on a motion
27 | to dismiss, see In re Beugen, 99 B R  961, 962-65 (9th Cir  BAP
28 | 1989), or, as here, a motion for summary judgment   See CBS, Inc

1 | v  Folks (In re Folks), 211 B R  378, 383-84 (9th Cir  BAP 1997)

2 | D   Swanson's Standing

3 |     1   Factual Background

4 |     Palmer Swanson, the plaintiff's principal, is an attorney

5 | who claims Moore owes his firm approximately $32,394 51 plus

6 | interest for unpaid legal services and costs   That figure is

7 | listed in a letter Palmer Swanson sent to Moore on February 25,

8 | 2008 as the amount due for services performed in a probate case

9 | concerning the estate of Margaret Curtis (the "probate case")

10 | Curtis was the aunt of Steve Leus, who is and at the time the

11 | legal services were performed was Moore's boyfriend and co-

12 | habitant   There has been no allegation that Moore owes Swanson

13 | for services rendered in any other matter   The fees in question

14 | were billed by Swanson on an hourly basis, they are not based on

15 | a contingency fee

16 |     2   California Business & Professions Code § 6148

17 |     Cal  Bus  & Prof  Code § 6148(a) provides that "[i]n any

18 | [non-contingency fee] case       in which it is reasonably

19 | foreseeable that total expense to a client, including attorney

20 | fees, will exceed one thousand dollars ($1,000), the contract for

21 | services in the case shall be in writing "  The written contract

22 | shall contain the basis of compensation, "[t]he general nature of

23 | the legal services to be provided to the client," and the

24 | respective responsibilities of the attorney and the client   Id

25 | Failure to comply with these requirements "renders the agreement

26 | voidable at the option of the client, and the attorney shall,

27 | upon the agreement being voided, be entitled to collect a

28 | reasonable fee "  § 6148(c)

- 6 -

1    Palmer Swanson testified at his deposition that he is not
2  aware of any written contracts executed between him and Moore for
3  the provision of legal services except an Attorney and Client
4  Engagement Agreement signed by Moore and Palmer Swanson in
5  January 2006 (the "Agreement")   The Agreement states that
6  Swanson will represent Moore with respect to "an action for
7  damages for conversion of furniture "[5]  (At the time the
8  Agreement was signed, Moore had a business called Encore!
9  Builders Clearing House, which was in the business of selling
10  furniture that had been in model homes )   The Agreement does not
11  state that it may be extended to cover any services or types of
12  services other than the original action for damages for
13  conversion of furniture   Thus, Swanson does not dispute that
14  Moore and Swanson did not have a written agreement explicitly
15  covering the legal services provided by Swanson in the probate
16  case   Palmer Swanson has testified that at the time he began
17  rendering services in the probate case, he <u>did</u> foresee that the
18  amount of legal fees would be more than $1,000

19    When asked why he did not execute a written retainer
20  agreement regarding the probate case, Palmer Swanson replied that
21  the matter was within the scope of Cal  Bus  & Prof  Code §
22  6148(d)(2)   That subsection provides that the requirement of a
23  written agreement shall not apply to "[a]n arrangement as to the
24  fee implied by the fact that the attorney's services are of the
25  same general kind as previously rendered to and paid for by the

26  _____

27    5    Exhibits 1 Through 7 to Supplemental Declaration of
   Palmer J  Swanson in Support of Plaintiff's Opposition to
28  Defendant's Motion for Summary Judgment, filed November 28, 2011
   ("Supp  Exhibits"), Ex  1, p  6, ¶1

1  client "   In this regard, Palmer Swanson testified that after the

2  original matter -- the furniture conversion matter, Swanson

3  handled other business matters for Moore -- "disputes with people

4  over storage of furniture, disputes over performance of contracts

5  involving furniture and staging," a nuisance complaint against

6  Moore involving a dog, and a couple of other nonbusiness matters

7  he could not recall the nature of   He characterized the probate

8  case as "the latest in a long line of those," and concluded that

9  it fell with the scope of § 6148(d)(2) [6]

10     The court disagrees for at least two reasons   First,

11  services in a probate case are not "of the same general kind" as

12  those involving disputes over furniture contracts or other

13  business matters   Second, the services previously rendered by

14  Swanson to Moore and paid for by Moore were services _for_ Moore,

15  whereas the services Swanson performed in the probate case were

16  services primarily _for a third party_ -- Leus [7]   For both these

17

18     6   Palmer Swanson testified that when Moore would request
    services on a new matter, "[he] would say, okay, we'll do that,
19  and we'll do it under the same terms as we have in our prior
    agreement [the Agreement]   And I would generally then write her
20  a letter stating, I'm undertaking your representation in this new
    matter, and away I go "  Notice of Lodging Deposition Transcript
21  of Palmer J  Swanson, Taken August 30, [2011], Changes and
    Exhibits 1-24 Thereto, in Support of Debtor['}s Motion for
22  Summary Judgment Under Local Rule 7056-1(a), filed October 27,
    2011 ("Swanson Dep "), at 48

23
    Swanson has not suggested that he wrote to Moore confirming
24  his representation in the probate case, and has not submitted a
    copy of any such letter

25
       7   Swanson contends its services in the probate case were
26  provided for Moore and Leus jointly, and that it had previously
    represented both of them jointly in "at least one or more matters
27  other than the Probate Matter "  Declaration of Palmer J  Swanson
    in Support of Plaintiff's Supplemental Opposition to Defendant's
28  Motion for Summary Judgment, filed November 28, 2011 ("Supp
    Decl "), ¶ 9   The only example Swanson gives is a letter Palmer

                              - 8 -

1 reasons, Swanson's services in the probate case did not fall
2 within the "same general kind" exception to the requirement of a
3 written fee agreement

4        3   The State Court's Order Compelling Arbitration

5        Prior to the filing of Moore's bankruptcy petition, Swanson
6 sought and obtained an order of the Sacramento County Superior
7 Court compelling Moore to arbitrate her dispute with Swanson over
8 the fees for the probate case (the "Arbitration Order") [8]
9 Swanson contends the Arbitration Order has binding effect and
10 precludes Moore from disputing in this court either (1) that the
11 Agreement was valid and enforceable or (2) that the fees for the
12 probate case were covered by the Agreement, such that Moore's
13 Bus  & Prof  Code § 6148(a) argument fails  This theory -- that
14 a court ordering parties to arbitration necessarily and
15 conclusively decides issues about the validity and scope of the
16 underlying contract -- would extend the effect of an order
17 compelling arbitration far beyond existing law governing
18 arbitration, claim preclusion, and issue preclusion

19 ─────────────────────

20 Swanson wrote to the County of Sacramento addressing a neighbor's
complaint about barking dogs on Moore's and Leus' property
21 Assuming but not deciding that Swanson's services in that matter
were of the "same general kind" as earlier services provided to
22 and paid for by Moore, legal services in a probate case in which
Leus, and not Moore, was a beneficiary, did not

23     8.   Swanson finds it significant that Moore did not oppose
24 the petition to compel arbitration  Moore states she was not
permitted to present opposition because she was not represented
25 by counsel, and thus, was not aware she had to notify the court
prior to the hearing of her objection to its tentative ruling
26 As discussed below, the court finds that Moore's objections to
the enforceability and applicability of the Agreement, as
27 affecting the fees for the probate case, would not have been
addressed by the court in any event, but would have been referred
28 to arbitration   Thus, Moore waived nothing by not presenting her
arguments at that time

1    In considering whether to give preclusive effect to a state
2  court's judgment, the bankruptcy court looks to that state's law
3  on preclusion   Diamond v  Kolcum (In re Diamond), 285 F 3d 822,
4  826 (9th Cir  2002)   Under California law, "[r]es judicata, or
5  claim preclusion, prevents relitigation of the same cause of
6  action in a second suit between the same parties or parties in
7  privity with them "  Mycogen Corp  v  Monsanto Co , 28 Cal  4th
8  888, 896 (2002)   For purposes of claim preclusion, a "cause of
9  action" is based on the plaintiff's "primary right," namely, "the
10 right to obtain redress for a harm suffered, regardless of the
11 specific remedy sought or the legal theory       advanced "
12 Boeken v  Philip Morris USA, Inc , 48 Cal  4th 788, 798 (2010)
13 "'Hence a judgment for the defendant is a bar to a subsequent
14 action by the plaintiff based on the same injury to the same
15 right, even though he presents a different legal ground for
16 relief '"  Id., quoting Slater v  Blackwood, 15 Cal  3d 791, 795
17 (1975), emphasis in original

18    For collateral estoppel, or issue preclusion, to apply, the
19 issue raised in the later proceeding must be identical to an
20 issue actually litigated and necessarily decided in the earlier
21 proceeding   Lucido v  Superior Court, 51 Cal  3d 335, 341-43
22 (1990)   For application of either claim preclusion or issue
23 preclusion, the decision in the earlier proceeding must have been
24 final and on the merits   Boeken, 48 Cal  4th at 797

25    By contrast, based on California law on arbitration, the
26 court concludes that the Arbitration Order is not final, binding,
27 "on the merits," or of any preclusive effect on any of the issues
28 in the underlying dispute, that is, the dispute the parties were

- 10 -

ordered to arbitrate [9]  Claim preclusion does not apply because
the "primary right" vindicated by an order compelling arbitration
is the petitioner's right to arbitration, not his or her rights
in the underlying dispute   Issue preclusion does not apply
because the issue Moore now raises -- Swanson's right to collect
fees for the probate case from Moore -- was not actually
litigated or necessarily decided by the state court in the
Arbitration Order

The Arbitration Order states that the court "confirms its
tentative ruling," which, in turn, reads in its entirety

> Petition to Compel Arbitration of Fee Dispute and for
> appointment of arbitrator is unopposed and is granted
> Arbitration to take place within 90 days of the date of
> this order
>
> Petitioner [Swanson] requests that the Court appoint
> either Thomas Trost or Eugene Haydu as arbitrator
> Petitioner is directed to attempt to meet and confer
> with respondent, and if there is no response the Court
> appoints Thomas Trost as arbitrator
>
> County Bar notice of right to arbitrate pursuant to B&P
> Code 6200-6206 only concerns Probate matter, seeking
> $32,011 05   Therefore the binding arbitration only
> concerns this amount
>
> The prevailing party shall prepare a formal order for
> the Court's signature pursuant to C R C  3 1312 [10]

Thus, the Arbitration Order itself says nothing about the
validity or enforceability of the Agreement, about whether the

---

9    Although an arbitration <u>award</u>, whether confirmed by a
subsequent judgment or unconfirmed, may have preclusive effect,
<u>Thibodeau v  Crum</u>, 4 Cal  App  4th 749, 758-61 (1992), "the
essential adjudication in an arbitration proceeding is the
award "  <u>Id</u>  at 760, quoting <u>Trollope v  Jeffries</u>, 55 Cal  App
3d 816, 824 (1976)   In this case, there was no award, only an
order compelling Moore to arbitrate

10   Supp  Exhibits, Ex  2

- 11 -

Agreement was extended by the parties to cover the probate case,
or about whether Swanson's services in the probate case fell
within the "same general kind" exception to the requirement of a
written fee agreement for services expected to cost more than
$1,000 [11] [12]   Swanson's statement that the Superior Court made a
specific finding that the probate matter was within the scope of
the Agreement is inaccurate

Petitions to compel arbitration are governed by Cal  Code
Civ  Proc  §§ 1281 and 1281 2   "A written agreement to submit to
arbitration an existing controversy or a controversy thereafter
arising is valid, enforceable and irrevocable, save upon such
grounds as exist for the revocation of any contract "  Cal  Code
Civ  Proc  § 1281

> On petition of a party to an arbitration agreement
> alleging the existence of a written agreement to
> arbitrate a controversy and that a party thereto
> refuses to arbitrate such controversy, the court shall
> order the petitioner and the respondent to arbitrate
> the controversy if it determines that an agreement to
> arbitrate the controversy exists, unless it determines
> that

---

11   Nor does Swanson's Petition to Compel Arbitration of
Fee Dispute   The closest it comes is this   "This agreement [the
Agreement] was extended to cover numerous matters of a period of
many months "  Supp  Exhibits, Ex  1   The petition does not
mention § 6148(d)(2) or the theory, apparently raised for the
first time in this adversary proceeding, that the services in the
probate case were of the same general kind as services earlier
provided to and paid for by Moore

12   "The party seeking to assert collateral estoppel has
the burden of proving all the requisites for its application   To
sustain this burden, a party must introduce a record sufficient
to reveal the controlling facts and pinpoint the exact issues
litigated in the prior action   Any reasonable doubt as to what
was decided by a prior judgment should be resolved against
allowing the collateral estoppel effect "  Kelly v  Okoye (In re
Kelly), 182 B R  255, 258 (9th Cir  BAP 1995), citations omitted,
emphasis added

- 12 -

(a) The right to compel arbitration has been waived by the petitioner, or

(b) Grounds exist for the revocation of the agreement

Cal  Code Civ  Proc  § 1281 2

Swanson contends the fees for the probate case must fall within the scope of the Agreement because the Superior Court found that the "controversy" over those fees fell within the scope of the Agreement   This argument is controverted by the definition of a controversy, for purposes of the arbitration statutes   "'Controversy' means <u>any question arising between parties to an agreement</u> whether such question is one of law or of fact or both "  Cal  Code Civ  Proc  § 1280(c), emphasis added The parties' controversy over the fees for the probate case falls within that definition, this does not mean, however, that the fees are covered by the Agreement, such that Moore is liable for them   Instead, that is precisely the question "arising between the parties" to the Agreement

In this regard,

[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy <u>may not be refused on the ground that the petitioner's contentions lack substantive merit</u>

Cal  Code Civ  Proc  § 1281 2, emphasis added

In ruling upon a petition to compel arbitration, the superior court is allowed to determine arbitrability issues, such [as] the existence and validity of the arbitration agreement, by utilizing summary motion procedures   (<u>Rosenthal [v  Great Western Fin  Securities Corp ]</u>, 14 Cal 4th 394, 409 [1996] )   These procedures are consistent with the use of private arbitration as a means of resolving disputes quickly and inexpensively   (<u>Ibid </u>)  "[T]he superior court does <u>not decide whether the plaintiff's causes of action have merit</u>, although some factual questions considered

- 13 -

1   in deciding the application may overlap those raised by
    the plaintiff's claims for relief   <u>The only question</u>
2   <u>implicated by the petition to compel arbitration is</u>
    <u>whether the arbitration agreements should be</u>
3   <u>specifically enforced</u>          [T]he superior court
    decides only the facts necessary to determine specific
4   enforceability of an arbitration agreement, an
    equitable question as to which no jury trial right
5   exists   (<u>Id</u> at p  412 )

6  <u>Duffens v  Valenti</u>, 161 Cal  App  4th 434, 444 (2008), emphasis

7  added

8       In reviewing a petition to compel arbitration, the court

9  considers only the existence and validity of the agreement to

10 arbitrate, not the validity or enforceability of the rest of the

11 parties' agreement   In other words, "'except where the parties

12 otherwise intend -- arbitration clauses      are "separable"

13 from the contracts in which they are embedded       '"

14 <u>Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc  v  100 Oak</u>

15 <u>Street</u>, 35 Cal  3d 312, 319 (1983), quoting <u>Prima Paint v  Flood</u>

16 <u>& Conklin</u> (1967) 388 U S  395, 402 (1967) [construing federal

17 arbitration law]   As a result, "even claims of fraud in the

18 inducement of the contract (as distinguished from claims of fraud

19 directed to the arbitration clause itself) will be deemed subject

20 to arbitration," <u>Ericksen</u>, 35 Cal  3d at 323, and the court is to

21 <u>grant</u> a motion to compel arbitration even in the face of a

22 party's contention that the underlying agreement was procured

23 through fraud   Id  at 324

24      "[U]nless a party is claiming (i) the entire contract is

25 illegal, or (ii) the arbitration agreement itself is illegal, he

26 or she <u>need not raise the illegality question</u> prior to

27 participating in the arbitration process, so long as the issue is

28 raised before the arbitrator "  <u>Moncharsh v  Heily & Blase</u>, 3

1  Cal  4th 1, 31 (1992), emphasis added    See also Buckeye Check

2  Cashing, Inc  v Cardegna, 546 U S  440, 445-46 (2006) ["unless

3  the challenge is to the arbitration clause itself, the issue of

4  the contract's validity is considered by the arbitrator in the

5  first instance "]

6          [T]he only appropriate issues of fact which may be
         raised [on a motion to compel arbitration] are (1)
7        whether "a written provision for arbitration was made"
         and (2) whether "there is a default in proceeding
8        thereunder "  Thus the word "default"      refers only
         to the "default" of a party in refusing to proceed to
9        arbitration as agreed rather than to a default by a
         party under the main provisions of the parties'
10       contract   .   Any other interpretation of [the
         arbitration statutes] would defeat the main purpose of
11       arbitration proceedings, which is to obtain an
         expeditious hearing and determination by arbitrators of
12       any "disagreement" which may arise

13  Weiman v  Superior Court of San Francisco, 51 Cal  2d 710, 712-13

14  (1959), emphasis added

15      For the same reasons, the court finds that in response to

16  Swanson's motion to compel arbitration, Moore would not have been

17  able to raise, and is not bound by her failure to raise, the

18  issues of the validity and enforceability of the Agreement

19  (except the portion constituting the agreement to arbitrate

20  disputes) or its applicability to the fees for the probate case

21      In St  Agnes Medical Center v  PacifiCare of California, 31

22  Cal  4th 1187 (2003), PacifiCare and St  Agnes Medical Center

23  were parties to two health services contracts, one entered into

24  in 1994 and the other in 2000   The 2000 agreement contained an

25  arbitration clause, the 1994 agreement did not   PacifiCare began

26  the legal contest between the parties by filing a lawsuit in

27  state court in which it alleged that the 2000 agreement was void

28  ab initio due to a condition subsequent, and sought to enforce

                              - 15 -

1  its rights under the 1994 agreement "as if the [2000 agreement]
2  never existed " 31 Cal 4th at 1192  St Agnes responded by
3  filing a state court action seeking damages for breach of the
4  2000 agreement, and in response to that complaint, PacifiCare
5  sought to compel arbitration under the arbitration clause in the
6  2000 agreement

7      The court held that PacifiCare had not waived its right to
8  compel arbitration even though it was simultaneously seeking
9  rescission of the 2000 agreement as a whole  St Agnes, 31 Cal
10  4th at 1200  There was no indication the court viewed
11  PacifiCare's motion to compel arbitration as precluding it from
12  continuing to challenge the validity or enforceability of the
13  2000 agreement -- the very agreement that contained the
14  arbitration clause

15      Similarly, neither the Arbitration Order nor Moore's failure
16  to challenge the petition for arbitration precludes her from
17  challenging the validity, enforceability, or applicability of the
18  Agreement to the fees for the probate case  Those issues were
19  simply not decided by the state court when it issued the
20  Arbitration Order  The only issue actually litigated and
21  necessarily decided was that there was an enforceable agreement
22  to arbitrate.

23      To summarize, issue preclusion does not apply to the
24  Arbitration Order because the issues to which Swanson seeks to
25  apply it were not actually litigated or necessarily decided
26  Claim preclusion does not apply because, although it bars
27  litigation of issues that could have been litigated, as well as
28  those that actually were litigated in the earlier proceeding,

- 16 -

1  Zevnik v  Superior Court, 159 Cal  App  4th 76, 82 (2008), in
2  this case, the only issue that could have been litigated on the
3  petition to compel arbitration was whether there was an agreement
4  to arbitrate disputes between Moore and Swanson   Had Moore
5  raised the issues of enforceability of the Agreement and its
6  applicability to the probate fees, the court would not have
7  decided them, it would have referred them to the arbitrator
8  Finally, neither issue preclusion nor claim preclusion applies
9  because the Arbitration Order was not a final ruling on the
10 merits of the issues presented in the underlying dispute [13]

11     4   Remaining Arguments re Lack of Written Agreement

12     Swanson raises several other arguments to support its theory
13 that Moore is liable for the fees even if the court concludes
14 there was no written agreement covering them   Palmer Swanson
15 testified that Moore had told him "they" (Moore and Leus) were

16

17     13   Swanson also relies on the Full Faith and Credit
18 Statute, 28 U S C. § 1738, under which a federal court must give
   the same effect, including preclusive effect, to a state court
19 judgment as would the courts of the state in which the judgment
   was entered   Swanson concludes, "This court is, therefore, bound
20 to give preclusive effect to [the Arbitration] Order, just as the
   Superior Court would "  Plaintiff's Supplemental Opposition to
21 Defendant's Motion for Summary Judgment, filed November 28, 2011,
   8 8-9

22     However, Swanson offers no basis on which to conclude the
23 Superior Court would give the Arbitration Order preclusive effect
   on any of the issues in the underlying dispute   A judgment
24 confirming an arbitration award has the same force and effect and
   may be enforced like any other judgment of the court that issues
25 it   Cal  Code Civ. Proc  § 1287 4   And an unconfirmed award,
   although it has only the status of a written contract between the
26 parties, Cal  Code Civ  Proc  § 1287.6, may also be entitled to
   preclusive effect   See n 9, above  But there is no authority
27 for the proposition that a California court would give an order
   compelling arbitration preclusive effect on the issues in the
28 underlying dispute -- the dispute that was being sent to
   arbitration

- 17 -

unhappy with "their" attorney in the probate case, that "they"
might want to engage Swanson to assist "them," and that Moore
later asked Swanson to represent her and Leus, who Palmer Swanson
understood at the time was Moore's husband   In addition, Swanson
contends (1) Swanson issued bills for services in the probate
case to both Moore and Leus, and Moore did not object, (2) Moore
wrote at least a couple of checks in payment of Swanson's fees
for the probate case, (3) Moore used the term "we" in e-mail and
other written communications in which she said she and Leus were
going to pay Swanson's bills, (4) Moore "called all the shots
during the [probate] litigation" (Swanson Dep  at 20), with
little input from Leus, and (5) Moore listed Swanson as a
creditor in her bankruptcy schedules, without checking the
"contingent," "unliquidated," or "disputed" box

     Assuming without deciding that these assertions are true,
none of them overcomes the requirement of either a written
"contract for services" under § 6148(a) or an implied agreement
to cover services of the "same general kind" as previously
rendered and paid for, under § 6148(d)(2), neither of which
existed here   Although Palmer Swanson testifies to an e-mail in
which he says Moore "states her agreement to pay for services
rendered in regard to the Probate Matter" (Supp  Decl , § 10),
the e-mail does not qualify as a written "contract for services,"
as required by § 6148(a)   In the e-mail, Moore states, "Early
Monday I am going to write your check that was not written
Friday   It is the one payment for the estate for around
$5,000.00   We will be sure to get the other monies owed to you

1  as soon as possible "  Supp  Exhibits, Ex  5 [14]

2      Moore's e-mail does not qualify as a written contract for

3  services under § 6148(a) because it was not signed by both the

4  attorney and the client, it does not state the basis of

5  compensation, including rates and charges applicable to the case,

6  and it does not state the general nature of the legal services to

7  be provided or the respective responsibilities of the attorney

8  and the client, all as required by that statute   In <u>Iverson,</u>

9  <u>Yoakum, Papiano & Hatch v  Berwald</u>, 76 Cal  App  4th 990 (1999),

10  the plaintiff/law firm relied on a written promissory note signed

11  by the client/defendant, in the amount of the attorney's fees

12  alleged to be due, as a substitute for a written fee agreement

13  required under § 6148(a)   The court disagreed

14          The problem with this theory is that there is no
15          evidence of any antecedent written fee agreement
            satisfying the provisions of section 6148, thus
            rendering any fee agreement voidable by the client,
16          because there is no valid underlying contract for fees,
            the promissory note, which also fails to comply with
17          section 6148, must also be voidable   If the instant
            promissory note were not also voidable under section
18          6148, the provisions of section 6148 would be able to
            be easily circumvented
19

20  76 Cal  App  4th at 996   The same reasoning and conclusion apply

21  with respect to Moore's e-mail to Palmer Swanson, and to her

22  listing of Swanson as a creditor in her bankruptcy schedules [15]

23  ─────────────

24      14   It appears from an accounting by Swanson, offered as an
    exhibit by Moore, that the payment referred to here was in fact
25  for services in the probate case

26      15   Further, Swanson does not contend it relied to its
    detriment on Moore's listing of Swanson as undisputed in her
27  original schedules or that Swanson was prejudiced by Moore's
    amendment to list it as disputed   <u>See</u> <u>Heath v  Am  Express</u>
28  <u>Travel Related Servs  Co  (In re Heath)</u>, 331 B R  424, 431 (9th
    Cir  BAP 2005)

- 19 -

1    For the reasons discussed above, the court concludes that
2  the services in the probate case were not covered by a written
3  fee agreement, as required by Cal  Bus  & Prof  Code § 6148(a),
4  and did not fall within the "same general kind" exception of §
5  6148(d)(2)   The Arbitration Order does not change either of
6  these conclusions, nor do Swanson's remaining arguments

7    Thus, Swanson was limited to recovery of "a reasonable fee,"
8  Bus  & Prof  Code § 6148(c), in other words, to fees on a quantum
9  meruit basis

10    5   The Statute of Limitations

11    "[A] statute of limitations does not begin to run until the
12  cause of action accrues "  Spear v  California State Auto  Assn ,
13  2 Cal  4th 1035, 1040 (1992)   The date of accrual on Swanson's
14  quantum meruit claim for fees in the probate case is either the
15  last date Swanson performed services in the case, January 16,
16  2008 (see, E O C. Ord, Inc  v  Kovakovich, 200 Cal  App  3d 1194,
17  1203 (1988)) or the date the last payment was made toward its
18  fees, October 7, 2007 (see Iverson, 76 Cal  App  4th at 996)
19  The court need not determine which of these dates is correct, as
20  the outcome of the Motion is the same either way

21    The statute of limitations on a quantum meruit claim is two
22  years   Cal  Code Civ  Proc  § 339, Iverson, 76 Cal  App  4th at
23  996   Depending on whether the claim accrued on October 7, 2007
24  or January 16, 2008, the statute of limitations on Swanson's
25  quantum meruit claim, unless otherwise tolled or satisfied,
26  expired on October 7, 2009 at the earliest or on January 16, 2010
27  at the latest.   On January 26, 2009, Swanson filed its petition
28  to compel arbitration

1    Thus, Swanson filed the petition before the statute of

2  limitations on the underlying quantum meruit claim had run    The

3  petition was also timely under the statute of limitations on an

4  action to compel arbitration, which is four years after the time

5  the other party has refused to submit to arbitration    _Spear_, 2

6  Cal  4th at 1040-42, _Meyer v  Carnow_, 185 Cal  App  3d 169, 173

7  (1986) [16]  Thus, Swanson was entitled to a determination by way of

8  binding arbitration as to the matter of its fees for the probate

9  case [17]

10    The Arbitration Order states that the arbitration was to

11  take place within 90 days from the date of the order, Swanson

12  apparently did not pursue arbitration within that time or in the

13  15 months before Moore filed her bankruptcy petition    However,

14  the record in this case is not sufficient to establish that by

15  this delay, Swanson waived or abandoned its right to arbitration

16  "Generally, the determination of waiver [of the right to

17  arbitration] is a question of fact," _see St  Agnes_, 31 Cal  4th

18  at 1196, involving a consideration of several factors    _Id_

19

20    16    The court rejects Moore's contention that the statute

21  of limitations began to run as early as January 2006, when the
    parties signed the Agreement, or June 2006, when Swanson's

22  services in the furniture conversion matter referred to in the
    Agreement were allegedly completed    Under either theory, the

23  cause of action would accrue, and the limitations period would
    begin, before the services for which the attorney's fees are

24  sought have even been performed

25    17    Moore argues the court should not consider the Arbitration
    Order because it was (1) not produced until the day of the hearing on

26  the Motion, (2) not produced in response to applicable discovery
    requests, and (3) not listed in Swanson's pretrial statement    However,

27  it is not the Arbitration Order that is the operative document for
    purposes of the statute of limitations issue, but the petition to

28  compel arbitration, which Swanson _had_ earlier produced and which Moore
    herself filed as an exhibit in support of the Motion

Moore makes a strenuous waiver argument, but it is directed to Swanson's failure to produce the Arbitration Order earlier in this adversary proceeding, rather than to the pre-petition failure to pursue arbitration after obtaining the Arbitration Order   Moore also complains of Swanson's activities in this adversary proceeding, including engaging in discovery and filing various motions   She cites <u>Christensen v  Dewor Developments</u>, 33 Cal  3d 778, 780-84 (1983), in which the court held that the plaintiffs, "by filing two complaints aimed at discovering their opponents' legal theories and thereby precipitating lengthy delays, [had] waived their right to arbitrate "  33 Cal  3d at 787

The reasoning and the case do not apply here   In <u>Christensen</u>, the plaintiffs chose to file and litigate an extensive civil complaint rather than proceeding with arbitration   There was no bankruptcy case involved   In the present case, Swanson sought to compel arbitration after Moore had not responded to its notice of right to arbitrate Apparently, neither party took any action in the intervening 15 months prior to Moore's filing of her bankruptcy petition   At that point, however, (1) the automatic stay prevented Swanson from pursuing the arbitration, (2) Swanson was arguably a creditor, within the Code's broad definition, with the right to challenge Moore's discharge, and (3) having chosen that option, Swanson had the right to engage in discovery and litigation in the adversary proceeding

/ / /

/ / /

- 22 -

1    ###### 6   Right to Quantum Meruit Relief

2    Finally, Moore contends Swanson's services in the probate

3    case were intended to and did benefit Leus, not Moore, and thus,

4    that Swanson is not entitled to recovery on a quantum meruit

5    basis as against Moore   The court was initially inclined to

6    agree that there was no genuine issue of material fact on this

7    issue, and it still appears the interests at stake in the probate

8    case were largely Leus' interests, not Moore's   Leus and his two

9    brothers were the sole beneficiaries of Curtis' will, they were

10   the only individuals who stood to share in the estate after

11   payment of creditor claims and attorney's fees   There is some

12   debate as to whether Moore held herself out as married to Leus,

13   however, as assets acquired by inheritance are separate property,

14   even if Moore and Leus were married or if Palmer Swanson believed

15   they were married, only Leus stood to benefit from the probate

16   estate

17   Swanson contends that as a result of its services, the

18   Curtis estate administrator did not pursue Moore on account of an

19   alleged fraudulent transfer by which the estate had sold a

20   residence to Moore's mother -- the house in which Moore and Leus

21   lived   It appears Swanson's services with respect to this issue

22   were nominal and incidental to the rest of its services in the

23   probate case, and there are hardly any time entries in Swanson's

24   billings that concern the matter

25   On the other hand, there is a genuine issue of material fact

26   as to whether some of Swanson's services in the probate case,

27   however small the portion, resulted in some benefit to Moore

28   Further, under California law, a party need not have received a

1 direct benefit in order to be obligated under quantum meruit for

2 services provided to another   In <u>Earhart v  William Low Co</u>, 25

3 Cal  3d 503 (1979), the issue was "whether a party who expends

4 funds and performs services at the request of another, under the

5 reasonable belief that the requesting party will compensate him

6 for such services, may recover in quantum meruit although the

7 expenditures and services do not directly benefit property owned

8 by the requesting party "  25 Cal  3d at 505   The court

9 concluded that he may, <u>id</u> at 515, stressing that "performance of

10 services at another's behest may itself constitute 'benefit' such

11 that an obligation to make restitution may arise "  <u>Id</u> at 511

12 Moore has testified as follows on the issue of whether she

13 asked Swanson to perform services in the probate case

14          I did not request that Swanson provide services
         for Leus   I did not offer to pay for any legal
15       services rendered to Steven Leus   I specifically told
         Swanson I would not be responsible in any way for
16       Steven Leus['] fees   I have never agreed to be
         responsible for the legal fees of Steven Leus on any
17       basis [18]

18 Swanson, on the other hand, testifies that it was Moore who came

19 to him in the first place and requested he provide representation

20 in the probate case   Thus, there is a triable issue of material

21 fact as to whether Swanson's services in the probate case were

22 rendered at Moore's request, and thus, whether she is liable to

23 Swanson on a quantum meruit basis for some or all of those fees,

24 whether or not she benefitted directly from those services   As a

25 result, the court concludes that, had the matter been arbitrated,

26

27          18   Declaration [of Kirra Moore] in Support of Debtor[']s
28 Motion for Summary Judgment, filed September 30, 2011, ¶¶ 4, 5,
         7, 8

- 24 -

it is possible the arbitrator would have found Swanson entitled
to fees from Moore on a quantum meruit basis, even if in a small
amount    In these circumstances, for the purposes of summary
judgment, and given the broad definition of a "claim" under the
Bankruptcy Code, <u>Egebjerg v  Anderson (In re Egebjerg)</u>, 574 F 3d
1045, 1049 (2009), the court finds there are genuine issues of
material fact as to Swanson's standing in this adversary
proceeding    For that reason, the Motion will be denied

III    CONCLUSION

For the reasons discussed above, the court concludes that
Swanson's complaint sufficiently pleads Swanson's standing as a
creditor of Moore, and further, that as a result of the presence
of genuine issues of material fact, Moore is not entitled to
judgment as a matter of law on the issue of Swanson's standing
Thus, Moore's requests for dismissal of the complaint and for
summary judgment will be denied

The court will issue an appropriate order

Dated   Jan. 3  , 2012        *Robert Bardwil*
                               ROBERT S  BARDWIL
                               United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**


The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list

David Ramirez
1395 Garden Highway, #150
Sacramento, CA 95833

C  Anthony Hughes
1395 Garden Highway, #150
Sacramento, CA 95833

Anthony Asebedo
11341 Gold Express Dr #110
Gold River, CA 95670

DATED
January 3, 2012

By _____
**Deputy Clerk**

Elizabeth Argento

EDC 3-070 (Rev  6/28/10)